UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM G. PIEKARSKI,

                          Plaintiff,

      v.                                            **DECISION AND ORDER**
                                                          08-CV-372S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

      1.      Plaintiff William G. Piekarski challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since April 30, 2001, due to polysubstance dependence, major depression, anxiety, and back problems. (R. at 29.) Plaintiff contends that because his impairments render him unable to work, he is entitled to disability benefits under the Act.

      2.      Plaintiff filed an application for Supplemental Security Income ("SSI") on March 14, 2002. His application was denied initially, after which he requested a hearing before an ALJ. That hearing took place on March 29, 2005. The ALJ considered Plaintiff's case *de novo*, and on February 2, 2007, issued a written decision denying Plaintiff's application for benefits. (R. at 28-42.) On May 9, 2008, the Appeals Council denied Plaintiff's request for review. (R. at 9-11.) Plaintiff filed the current civil action challenging Defendant's final decision on May 22, 2008.[1]

---

[1] The ALJ's decision became the Commissioner's final decision in this matter after the Appeals Council denied Plaintiff's request for review.

1

3. The parties subsequently filed Motions for Judgment on the Pleadings.[2] After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement on January 14, 2009. For the following reasons, Defendant's motion is granted and Plaintiff's is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence

---

[2] Defendant filed his Motion on November 10, 2008 (Docket No. 8), and Plaintiff filed his Motion on November 13, 2008 (Docket No. 10).

may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts: First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.  In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since April 30, 2001 (R. at 29); (2) Plaintiff's polysubstance dependence, major depression, anxiety, and back problems are "severe" impairments within the meaning of the Act (R. at 29); (3) Plaintiff's mental impairments do not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4 (R. at 29); (4) Plaintiff retains the residual functional capacity ("RFC") to perform a significant range of light work with certain restrictions (R. at 37-38, 41[3]); and (5) although Plaintiff is unable to perform his past relevant work, based on his age, education, work experience, and residual functional capacity, Plaintiff is capable of performing a significant range of light work. (R. at 39-41). Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act at any time through the date of the ALJ's decision. (R. at 40.)

10. Plaintiff advances two challenges to the ALJ's decision. First, Plaintiff argues

---

[3] Specifically, the ALJ held that Plaintiff could "sit for two hours at a time, up to eight hours a day. He can stand and walk for up to thirty minutes at a time, up to four hours a day. He can lift and carry up to five pounds frequently and twenty pounds occasionally. He can bend occasionally, as well as occasionally reach overhead and to end range of motion. He cannot squat, crawl, or climb. He should not work around unprotected heights, not engage in prolonged driving, and not work around dangerous moving machinery. The claimant can perform low stress, slow-paced work." (R. at 38.)

4

that the ALJ erred by failing to re-contact Dr. David Kupkowski, Plaintiff's primary care physician. (Pl.'s Mem., pp. 6-7.[4]) In her decision, the ALJ adopted Dr. Kupkowski's opinion "in large measure," but rejected his opinion to the extent it concluded that Plaintiff's back pain "occasionally impair[ed] and/or preclud[ed] performance of even simple work tasks." (Id., p. 7; R. at 37.) Plaintiff contends that the ALJ should have re-contacted Dr. Kupkowski "to ask him if his opinion was or was not based on medically acceptable clinical and laboratory diagnostic techniques." (Pl.'s Mem., p. 6.)

Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. 20 C.F.R. § 404.1512(e). Additional evidence or clarification is sought if there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1512(e)(1); Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998). But the ALJ is not prevented from making a disability determination if "the evidence . . . , including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, [so long as the ALJ weighs] all of the evidence and see[s] whether [he] can decide whether [plaintiff is] disabled based on the evidence." 20 C.F.R. § 404.1527(c)(2).

Here, there is no indication that the ALJ had insufficient evidence or could not reach a conclusion based on the record before him.[5] And there is nothing to suggest that the ALJ

---

[4] Referring to Plaintiff's Memorandum of Law in Support of her Motion for Judgment on the Pleadings. (Docket No. 10.)

[5] The record contains extensive treatment notes and records of Dr. Kupkowski (R. at 380-92, 812-968), along with the opinions of numerous other medical professionals.

5

rejected the portion of Dr. Kupkowski's opinion which stated that Plaintiff experienced physical pain while performing certain work tasks because this part of the opinion was unsupported by acceptable medical evidence. Rather, the ALJ concluded that this portion of Dr. Kupkowski's opinion was entitled to little weight for three reasons. First, the ALJ found this conclusion was contradicted by Dr. Elizabeth DiTonto, who held that Plaintiff's range of motion in his spine was normal, his gait was normal, and he was able to walk on his heels and toes. (R. at 36.) Second, the ALJ determined that the relevant portion of Dr. Kupkowski's opinion was partially based upon statements made by Plaintiff, who the ALJ found not credible, to Dr. Kupkowski. (R. at 37) ("I will not, however, adopt the view that the claimant's alleged back pain and medications [impair him] as this conclusion assumes a level of credibility on the part of the claimant not justified by anything in this record, and in fact, directly contradicted by it.") Third, the ALJ found that Plaintiff's behavior is motivated, in part, by his desire to obtain additional prescription drugs. (R. at 37.) Accordingly, this Court finds that the ALJ properly weighed all of the evidence, and was under no obligation to re-contact Dr. Kupkowski.

11.  Plaintiff also argues that the ALJ erred by relying on the testimony of the vocational expert, Timothy P. Janikowski, Ph.D., C.R.C., who stated that a significant number of jobs exist in the economy, which Plaintiff could perform. (Pl.'s Mem., pp. 8-9.) Plaintiff raised no objection to Dr. Janikowski's testimony at the hearing. ( R. at 1220-21.) But afterwards, Plaintiff argued that he is entitled to review Dr. Janikowski's supporting documentation, and that without such review, he cannot "independently verify the methods used [by the vocational expert]." (Id.) The ALJ conducted an internal review of the documents and held that Plaintiff was not entitled to view and inspect these documents. (R. at 40.)

6

Rule 702 of the Federal Rules of Evidence provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion of otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Although the United States Court of Appeals for the Seventh Circuit noted in Donahue v. Barnhart that the Federal Rules of Evidence do not apply to disability adjudications, the Court held that vocational experts must use reliable methods, which must be available on demand, otherwise, the ALJ's determination will not be supported by substantial evidence. 279 F.3d 441, 446 (7th Cir. 2002).

The Seventh Circuit also explained the importance of the demand's timing. For instance, the Court held that "[i]f the basis of the vocational expert's conclusions *is* questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702) to find out whether the purported expert's conclusions are reliable." Donahue, 279 F.3d at 446. (brackets and emphasis in original). But if an objection to the vocational expert's testimony is raised *after* the hearing, "the ALJ is not obliged to reopen the record." Id. at 447 (emphasis added).

Unlike the Seventh Circuit, the United States Court of Appeals for the Ninth Circuit held in Bayliss v. Barnhart that a vocational expert's recognized testimony provides the necessary foundation, and no additional foundation is required. 427 F.3d 1211, 1218 (9th Cir. 2005[6]). Because the Second Circuit has not yet addressed this issue, this Court must evaluate Plaintiff's argument based upon the Circuit split that exists between the Seventh

---

[6] The Ninth Circuit, like the Seventh Circuit, also held that the Federal Rules of Evidence do not apply to Social Security administrative proceedings. Bayliss, 427 F.3d at 1218.

and the Ninth Circuit.[7]

But even assuming, without deciding, that the Seventh Circuit is correct, Plaintiff's argument still fails because Plaintiff never objected to Dr. Janikowski's testimony at the hearing. (R. at 1220-21.) Instead, Plaintiff waited until May 19, 2006, more than one year after the hearing, to ask the ALJ for copies of Dr. Janikowski's records. (R. at 20.) In light of Plaintiff's untimely demand, the ALJ was under no obligation to allow Plaintiff to inspect the bases of Dr. Janikowski's conclusions, and potentially subject him to cross-examination at this point. See Donahue, 279 F.3d at 447.

Nonetheless, despite Plaintiff's untimeliness, the ALJ wrote Dr. Janikowski and asked him to explain the basis of his conclusions. In response, Dr. Janikowski explained that his conclusions were based upon various government publications, statistics reports, labor market surveys, and his own adjustments through his professional experiences. (R. at 1002.[8]) And in her decision, the ALJ acknowledged Plaintiff's objection, but held that Dr. Janikowski's sources were reliable. (R. at 40.) Accordingly, this Court finds that the ALJ committed no error.

12. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical

---

[7] This Court also notes that the Sixth Circuit held that an ALJ's decision to credit the testimony of a vocational expert is subject to "substantial deference." Rowden v. Chater, 87 F.3d 1315, *4 (6th Cir. 1996).

[8] Specifically, Dr. Janikowski stated that he relied on "Employment Statistics Quarterly, NY State Department of Labor, UB Bureau of Labor and Statistics, information provided by Labor Market Economists employed in NY, Occupational Outlook Handbook." (R. at 1002.) Dr. Janikowski also stated that he made "minor adjustments to these labor market data based on knowledge [he] acquired from the labor market surveys [he has] done or supervised, job analyses [he has] done or supervised, and discussions with other experts on [sic] the labor market." (Id.)

8

evidence in rendering her decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: September 9, 2009
       Buffalo, New York

                                                    /s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                  United States District Judge